NO. 07-10-00502-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 22, 2012

ADRIAN BIERA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-410,709; HONORABLE JIM BOB DARNELL, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant Adrian Biera was found guilty by a jury in 2006 of the 2005 aggravated robbery[1] of a Lubbock Whataburger restaurant. He was sentenced to sixty years' incarceration. We reversed the judgment and remanded the case for a new trial.[2] On retrial the jury again found appellant guilty of aggravated robbery, and assessed his punishment at fifty-five years in prison. He again appeals, raising seven issues. We will affirm.

---

[1] *See* Tex. Penal Code Ann. § 29.03 (West 2011).

[2] *Biera v. State,* 280 S.W.3d 388 (Tex.App.--Amarillo 2008, pet. refused).

## Background

Because appellant does not challenge the sufficiency of the evidence to support his conviction, and because our previous opinion discusses much of the evidence also presented on retrial, we mention only those facts necessary to the disposition of appellant's issues on appeal.

The Whataburger was robbed around six a.m. on September 7, 2005, by two perpetrators armed with handguns. They wore masks, gloves and camouflage clothing. The restaurant manager and employee were held at gunpoint while the robbers took money from cash drawers. The robbers fled the scene and police were immediately summoned. The officer responding to the call noted loose change on the restaurant floor.

At that time, appellant rented and occupied a four-bedroom apartment in a Lubbock complex. The apartment also was occupied by appellant's two minor children, Maria Vargas, Vargas's cousin Stephanie Yzaguirre, Yzaguirre's ten-year-old daughter, and Yzaguirre's common-law husband, Miguel Morado. All the adults used illegal drugs including methamphetamine and crack cocaine.

Testimony showed that only Vargas was employed. She worked at a Lubbock motel. Although appellant and Morado also owned vehicles, Vargas testified that her car was the only vehicle with a current registration.

Sometimes at night appellant and Morado dressed in dark clothing and left in Vargas's car. These outings often lasted until the morning hours. At times, the two

armed themselves with handguns. On the occasions that appellant and Morado used Vargas's car, she later found her interior car decorations stowed in the glove compartment or on the seat. In exchange for use of her vehicle, appellant provided Vargas with methamphetamine.

At her work, Vargas began stealing credit cards from motel guests. She gave them to Morado and Yzaguirre, who used them to buy gasoline and retail items.

Four days before the robbery, appellant asked Yzaguirre to purchase two ski masks for him. He specified masks that covered the face and were not brightly colored. She bought the masks at a Wal-Mart store.

After the robbery, Lubbock police contacted Vargas in their investigation of the stolen credit cards. Vargas gave a detective information about her involvement with the credit cards, and information which led police to identify appellant and Morado as suspects in the Whataburger robbery.

Based on information from Vargas, police obtained a warrant for Morado's arrest on a forgery charge. On September 29, 2005, the detective went to the apartment to serve the warrant but was told by the complex manager that appellant's apartment was vacant. When the detective found appellant and others still in the apartment, she arrested them on a charge of criminal trespass. In conjunction with the arrest, the detective entered the apartment and saw drug paraphernalia and weapons.

About a week later the detective returned to appellant's apartment while a writ of possession was being executed. Apartment employees were emptying the apartment,

3

placing its contents on the lawn. Among the items were two masks, which were identified at trial as consistent with the masks used in the robbery.

After appellant and Morado were indicted for the Whataburger robbery, Morado plead guilty and was sentenced to twenty years' imprisonment. Like at appellant's original trial, on the retrial Morado testified that he drove Vargas's car to the Whataburger and appellant and an unidentified male went inside. Testimony showed the robbers took $224.04; Morado testified his share was "about $40."

In the jury charge on retrial, the trial court instructed the jury on the law of accomplice witness testimony. Morado was submitted as an accomplice as a matter of law and Yzaguirre as an accomplice as a matter of fact.

Analysis

Of the seven issues appellant presents, issues one through five complain of the trial court's ruling on his motion to suppress evidence seized from his apartment and a vehicle. His sixth and seventh issues challenge the admission of evidence of extraneous offenses.

Suppression Issues

In reviewing a trial court's ruling on a motion to suppress, we apply a familiar standard.

> The trial court's ruling on a motion to suppress is reviewed for abuse of
> discretion. The trial court is given almost complete deference in its
> determination of historical facts, especially when based on an assessment
> of credibility and demeanor. The same deference is given to the trial court

4

with respect to its rulings on the application of the law to questions of fact if resolution of those questions depends on an evaluation of credibility and demeanor. Mixed questions of law and fact that do not turn on credibility and demeanor are reviewed de novo. When the trial court does not make express findings of fact, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and should assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.

*Lujan v. State,* 331 S.W.3d 768, 771 (Tex.Crim.App. 2011) (citations omitted).

*Evidence seized in the apartment*

Through his first three issues, appellant asserts the trial court erred in denying his motion to suppress items of personal property police seized in his apartment on September 29, 2005. He argues the seizure violated the Fourth Amendment to the United States Constitution, and Article I, Section 9 of the Texas Constitution, and admission of the items was contrary to article 38.23 of the Texas Code of Criminal Procedure. The essence of appellant's argument is that at the time of the search and seizure he maintained lawful possession of the apartment and the warrantless entry of police violated the constitutional standards. We will discuss these three issues jointly.[3]

---

[3] Appellant points out that under Article I, Section 9 the State must prove voluntariness of consent to search by clear and convincing evidence while under federal law the burden of proof for establishing voluntariness of consent is by a preponderance. *See Meekins v. State,* 340 S.W.3d 454, 459-60 (Tex.Crim.App. 2011) (stating proposition). While this is a correct statement of law, we find it lacks application here. An issue of voluntariness has not been raised. Because appellant does not otherwise argue Article I, Section 9 offers broader protections than the Fourth Amendment, we analyze this case under the federal standard. *Limon v. State,* 340 S.W.3d 753, 757 n.15 (Tex.Crim.App. 2011); *Narvaiz v. State,* 840 S.W.2d 415, 432 (Tex.Crim.App. 1992).

The Lubbock police detective was the only witness at the motion to suppress hearing. She told the court she came to appellant's apartment complex to serve Morado with an arrest warrant. She also was interested in speaking with appellant. The manager of the apartment complex told the detective appellant's apartment was vacant. The manager also said that a "walk-through" inspection had been performed and the door locks changed. She showed the detective a judgment from justice court and said the occupants "were supposed to be out." The detective believed the judgment was sufficient to "get the [occupants] to leave." The detective agreed that the manager was "very strong and assertive" in expressing a belief that the apartment was vacant.

The detective and manager walked to the apartment and heard loud music coming from within. They returned to the office so the manager could check the records. She reiterated to the detective that the apartment was supposed to be empty. She gave the detective permission to "go through" the apartment and added if anyone was in the apartment she wanted them removed. She also gave the detective keys to the apartment.

The detective called for backup, and returned to the apartment. Approaching the door, she saw several people leaving, including Morado and appellant. These individuals were handcuffed and charged with criminal trespass. One of the group asked appellant why he was being arrested and appellant replied, "I'm not supposed to be here. I'm supposed to be gone out of here." Police later seized a number of items of personal property located in the apartment.

6

The reasonableness of a search is a question of law we review *de novo*. *Kothe v. State,* 152 S.W.3d 54, 62 (Tex.Crim.App. 2004). We measure reasonableness by examining the totality of the circumstances, balancing the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* at 63.

The warrantless entry of police into a residence is presumed unreasonable unless the entry is within a well-defined group of exceptions. *See Limon*, 340 S.W.3d at 756 (citing *Valtierra v. State,* 310 S.W.3d 442, 448 (Tex.Crim.App. 2010)). One such exception is the voluntary consent of the individual whose property is searched or of a third-party possessing common authority over the premises searched. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Limon,* 340 S.W.3d at 756. While a landlord generally may not consent to search a leased residence, *Chapman v. United States,* 365 U.S. 610, 616-17, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), a valid consensual search does not necessarily depend on actual authority because even if the consenting party does not actually possess the requisite relationship to the premises, the Fourth Amendment is not violated if an officer has an objectively reasonable, even if mistaken, good-faith belief that she obtained valid consent to search the area. *Rodriguez,* 497 U.S. at 186; *see Hubert v. State,* 312 S.W.3d 554, 561 (Tex.Crim.App. 2010) (noting the Supreme Court has explained under such circumstances apparent authority exists and the purported consent from the third party can make the search reasonable); *United States v. Brazel,* 102 F.3d 1120, 1148 (11th Cir. 1997) (similar analysis).

7

Thus, officers may rely on the landlord's representation that she possesses authority to authorize a search, provided objective circumstances make reliance reasonable. *Rodriguez,* 497 U.S. 177. We determine whether the landlord possessed apparent authority using an objective standard and ask "would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Limon,* 340 S.W.3d at 756 (quoting *Rodriguez,* 497 U.S. at 188 (internal citations omitted)). The question "is whether the officer's belief in an individual's authority is reasonable under the facts known to the officer." *Limon,* 340 S.W.3d at 758 (citing *Rodriguez,* 497 U.S. at 188). It is the burden of the State to prove actual or apparent authority by a preponderance of the evidence. *Limon,* 340 S.W.3d at 757. "[W]hether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact which reviewing courts should examine *de novo.*" *Hubert,* 312 S.W.3d at 559-560. "If, as in this case, a trial court does not enter findings of fact, a reviewing court must view the evidence in a light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling." *Id.* at 560.

We conclude the detective's testimony gave the trial court reasonable basis to conclude she had an objectively reasonable, even if mistaken, good-faith belief that she had valid consent from the apartment manager to enter and search appellant's apartment. *See Brazel,* 102 F.3d at 1148-49 (finding similar objectively reasonable belief on similar facts).

8

Relying on the fact the Lubbock County justice court judgment was a money judgment for delinquent rent, not one authorizing eviction, appellant asserts the apartment manager had no legal right of access to the apartment. A copy of the judgment the manager showed the detective was admitted at the suppression hearing. It was signed September 1, 2005 in a case styled *Mission Square v. Adrian Biera,* and ordered appellant to pay $604 plus court costs.[4] At the suppression hearing, the detective agreed that "a few days later" she learned not every legal step had been taken by September 29 for management to evict appellant from the apartment. A writ of possession was executed on October 7. In response to appellant's assertion, we first note that reasonableness is not assessed through the lens of hindsight. *Rodriguez,* 497 U.S. at 188 ("As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" (internal quotation marks omitted)). Second, we point out concepts of state property law do not control Fourth Amendment analysis. *See Mugweni v. United States,* Nos. 3:09-CV-2245-K, 3:07-CR-0159-K, 2011 U.S. Dist. Lexis 13671, at *9-10 (N.D. Tex. Feb. 10, 2011) (stating for Fourth Amendment purposes whether landlord had attempted eviction under Texas property law was immaterial; rather, determinative factor was whether defendant relinquished reasonable expectation of privacy in property so that search and seizure was valid); *United States v. Opeoluwa Adigun,* No. 1:10-CR-00202-RWS-RGV, 2011 U.S. Dist. Lexis 60310, at *82-92 (N.D. Ga. May 4, 2011) (magistrate judge's

---

[4] Mission Square was the name of the apartment complex.

report and recommendation), *approved and adopted,* 2011 U.S. Dist. Lexis 60303 (N.D. Ga. June 3, 2011) (noting inapplicability of private property law to Fourth Amendment analysis and finding officers had reasonable, good faith basis for believing owner had regained possession of property and could consent to its search when evidence included representations of owner that tenants were evicted and he was preparing to "clean the building out," and he unlocked the front door with his key). *See generally Chapman v. United States,* 365 U.S. at 617.

The terms of the September 1 judgment did not preclude the trial court from finding the detective had a reasonable belief the manager was authorized to give her valid consent to enter appellant's apartment.

With regard to the application of article 38.23, "[t]he exclusionary language of article 38.23 applies only if an officer or other person obtains evidence in violation of either the constitutions or the laws of the United States or the State of Texas. Therefore, for an accused to obtain the protection of article 38.23, the police must have violated either the constitutions or laws of the United States or the State of Texas." *Owens v. State,* 861 S.W.2d 419, 421 (Tex.App.--Dallas 1993, no pet.). Because the present record does not demonstrate police misconduct in connection with the search of appellant's apartment and the seizure of personal property found therein, the exclusionary effect of article 38.23 has no application.

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress personal property seized by police from the apartment. Appellant's issues one through three are overruled.

*Evidence seized in appellant's vehicle*

Appellant also sought to suppress a handgun seized by the detective on October 7, 2005, but the trial court denied his motion. Through his fourth and fifth issues, appellant asserts the trial court erred by doing so. He argues the seizure violated his rights under the Fourth Amendment and Article I, Section 9. We will discuss the issues jointly.

As noted, the detective returned to the apartment complex on October 7, while a writ of possession obtained by the apartment complex was being executed. The detective saw appellant and Christina Ortiz placing items from the apartment into a plastic bag. As appellant walked from the apartment the detective arrested him on a misdemeanor warrant and placed him in handcuffs. Ortiz was not arrested nor was she patted-down for weapons. She "was allowed to leave," walked to appellant's car in the parking lot and seated herself in the car, leaving the door open. The plastic bag sat on the car's floorboard, within reach of Ortiz. The detective could not recall if by that time appellant had been transported from the scene but she agreed he was handcuffed and not near the car. The detective walked toward appellant's car intending to make certain "no guns were accessible to [Ortiz]." The detective did not remember whether she said anything to Ortiz as she approached the vehicle, but when the detective reached the vehicle Ortiz voluntarily arose and walked away, leaving the bag inside the vehicle. Because the detective believed appellant kept a gun in proximity, and because on September 25 she had found Ortiz in appellant's apartment with a gun, she proceeded with a search of appellant's car and the bag. She found a handgun in the bag.

11

During the detective's testimony the search sometimes was referred to as a search of the vehicle but the detective also referred to it as a search of Ortiz. It seems clear that Ortiz carried the bag from the apartment after she "was allowed to leave." The proximity of appellant's vehicle to the detective's location after she handcuffed appellant is not clear from the record, nor is the amount of time that elapsed between the detective's arrest of appellant and her approach of Ortiz sitting in the vehicle. The detective was the only Lubbock police officer present when she arrested appellant, but a constable was present, presumably in connection with the execution of the writ of possession.

Citing *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), appellant's primary contention on appeal is that the search cannot be justified as a search incident to arrest because appellant was handcuffed and was not near the vehicle. The State argues on appeal that the detective's search was permissible to protect herself from possible danger from Ortiz, under the rationale of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). We find we need not resolve these contentions because the admission of the handgun the detective found in the plastic bag, if erroneous, was harmless.

If the handgun was located through violation of the Fourth Amendment and should have been excluded from evidence through appellant's motion to suppress, we must reverse the conviction unless we determine beyond a reasonable doubt the admission of the handgun did not contribute to appellant's conviction. Tex. R. App. P. 44.2(a); *Langham v. State,* 305 S.W.3d 568, 582 (Tex.Crim.App. 2010); *Davis v. State,*

12

203 S.W.3d 845, 849-53 (Tex.Crim.App. 2006). To make that determination, we consider the importance of the evidence to the State's case, whether the erroneously admitted evidence was cumulative of other evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence on material points, and the overall strength of the State's case. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Langham,* 305 S.W.3d at 582.

The handgun found in the plastic bag in the vehicle was cumulative of other evidence of similar effect. Vargas testified that she recalled seeing appellant with a handgun in the waistband of his pants. The evidence also included another pistol and various items of ammunition. It was never argued the handgun found in the bag was used in the Whataburger robbery and its caliber did not match a cartridge found by police in the restaurant. The gun was not analyzed for fingerprints. Other testimony that appellant owned and carried firearms was admitted and it was never asserted that appellant's possession of the handgun was somehow illegal. As noted, Morado plead guilty to committing the robbery and testified against appellant.

We conclude beyond a reasonable doubt that the admission of the handgun found in the bag did not contribute to appellant's conviction. Appellant's issues four and five are overruled.

Admissibility of Evidence of Other Crimes, Wrongs or Acts: Rules 404(b) and 403

Through his sixth and seventh issues appellant asserts the trial court abused its discretion by admitting evidence that appellant "and those associated with him, used illegal drugs, burglarized vehicles, committed other property crimes including forgery

13

and credit card abuse and may have had contraband (rolls of change) related to" the Whataburger robbery. Appellant adds that even if such evidence of extraneous crimes and acts was relevant its probative value was substantially outweighed by the danger of unfair prejudice.

We begin by noting the record of the guilt-innocence phase of trial does not contain evidence that appellant burglarized vehicles. We note also that appellant later in his argument acknowledges that evidence of the presence in the apartment of money in change, purportedly proceeds from the robbery, was properly admitted. We will not further discuss those two categories of evidence.

Through the testimony of Vargas, Yzaguirre and Morado, and that of the detective, the State presented evidence that appellant and other occupants of the apartment used illegal drugs, including crack cocaine and methamphetamine, and profited from the use of the credit cards stolen by Vargas.[5]

Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

---

[5] Appellant's brief does not contain record references to the testimony he asserts was admitted in violation of Rule 404(b). *See* Tex. R. App. P. 38.1(g), (i) (requiring record references). The State's brief fills the void, listing record references for the testimony of drug use and possession by appellant and other occupants of the apartment and for testimony of their use of stolen credit cards to buy gasoline and other items. The State includes record references also for testimony referring to appellant's practice of leaving the apartment late at night wearing dark clothing and testimony of his possession of firearms and ammunition. That additional testimony is not included within appellant's Rule 404(b) complaint, and we will not further consider it here.

14

accident." Tex. R. Evid. 404(b). Whether objected-to evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). An appellate court owes no less deference to the trial judge in making this judgment than it affords him in making any other relevancy call; that is, such a decision is reviewed for abuse of discretion. *Id.* Therefore, as long as the trial court's ruling was within the zone of reasonable disagreement, we will not intercede. *Id.*

While the defendant's motive is not a required element in a criminal prosecution, "evidence of motive is one kind of evidence aiding in the establishing proof of an alleged offense." *Crane v. State,* 786 S.W.2d 338, 349-50 (Tex.Crim.App. 1990). To be admissible, evidence of motive must tend to raise an inference that the accused had a motive to commit the offense for which he is on trial. *Bush v. State,* 628 S.W.2d 441, 444 (Tex.Crim.App. 1982); *Rodriguez v. State,* 486 S.W.2d 355, 358 (Tex.Crim.App. 1972); *see Ladd v. State,* 3 S.W.3d 547, 568 (Tex.Crim.App. 1999) (evidence of defendant's use of cocaine on night of murder was admissible to show defendant was motivated to kill in order to obtain money for cocaine); *Maranda v. State,* 253 S.W.3d 762, 767 (Tex.App.--Amarillo 2007, pet. dismissed) (evidence of defendant's use of intoxicant taken in robbery was relevant to show defendant's motivation to commit robbery for the sake of becoming intoxicated); *Massey v. State,* 826 S.W.2d 655, 657-58 (Tex.App.--Waco 1992, no pet.) (evidence of defendant's use of crack cocaine prior to committing robbery was admissible to demonstrate motive for robbery).

15

The State argues evidence of drug use by appellant and other occupants of the apartment was relevant to show a motive for the robbery. We agree. Vargas and Morado testified none of the apartment occupants was employed but Vargas. Yet drug use was common. Morado testified he and appellant used methamphetamine together before the robbery. The trial court reasonably could have found their drug habits provided a motive for robbery for individuals with no employment income.

With regard to the evidence of "credit card abuse," Vargas testified that while she was staying at appellant's apartment, and on more than five occasions but fewer than ten, she stole credit cards from customers at the motel where she was employed. She testified she gave those cards to Morado and Yzaguirre, who used them to put gas in Vargas's car and to make other purchases. She testified appellant also used her car on occasion, but she never gave him one of the stolen cards.

Yzaguirre's testimony concerning the credit card use was slightly broader than Vargas's. Yzaguirre said that Vargas was "spending" the stolen cards. Asked if Vargas was giving the cards to "somebody else," Yzaguirre responded, "Well, everybody went." She also agreed, "they were filling up cars." Morado also testified Vargas gave him credit cards, and he "would go to Wal-Mart and use them." He also agreed he "[s]ometimes would . . . put gas in cars as well."

Morado testified it was Vargas's car he and appellant drove to commit the robbery. Because of that testimony, Vargas's car has a direct connection with the robbery. Vargas's testimony to appellant and Morado's practice of using her car for their late-night forays served to corroborate Morado's accomplice-witness testimony.

The testimony to Morado's use of the credit cards Vargas gave him to keep gas in her car also was relevant to show the men's use of Vargas's car, on the other occasions and on the occasion of the robbery. The trial court thus reasonably could have seen the evidence of Morado's use of the credit cards as having relevance to show the identity of Morado and appellant as the robbers. Appellant forcefully challenged the evidence tending to establish his identity as one of the robbers. We conclude the trial court's ruling that evidence regarding the stolen credit cards had relevance beyond showing character conformity was within the zone of reasonable disagreement and thus was not an abuse of discretion. *Montgomery,* 810 S.W.2d at 391; *see Charlie Melvin Page v. State,* 137 S.W.3d 75, 78 (Tex.Crim.App. 2004) (if issue of identity is raised, Rule 404(b) permits introduction of extraneous offense evidence relevant to identity issue); *Darnell Alonzo Page v. State,* 125 S.W.3d 640, 649 (Tex.App.--Houston [1st Dist.] 2003, pet. refused) (extraneous act evidence was admissible to show identity).

Relevant evidence may, nevertheless, be excluded under Rule 403 if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. When conducting the balancing test of Rule 403, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the countervailing considerations listed in the rule. *Id.* In its evaluation of the evidence, the trial court balances (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the

17

main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State,* 215 S.W.3d 870, 880 (Tex.Crim.App. 2007).

Appellant's identity as one of the robbers was a core dispute in the case. The restaurant employees were unable to clearly identify appellant. The State's evidence corroborating the testimony of its accomplice-witness Morado was largely circumstantial. The trial court reasonably could have considered the evidence of which appellant complains to be both probative and necessary. The stolen credit card evidence had little prejudicial effect as character conformity evidence against appellant because Vargas testified she did not give a stolen card to appellant. Appellant does not point to nor do we find anything of record demonstrating the evidence carried a tendency to confuse or mislead the jury from the issues or to suggest a decision on an improper basis. And the charge instructed the jury that it could consider any testimony regarding extraneous offenses committed by appellant only if it believed appellant committed the other offenses beyond a reasonable doubt and then only for the purpose of determining motive, intent, preparation, plan, knowledge and identity. We see no abuse of discretion in a conclusion admission of the complained-of evidence was not precluded by Rule 403.

We overrule appellant's sixth and seventh issues.

Conclusion

Having overruled each of appellant's issues on appeal, we affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.