# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00228-CR

**Gary Noria, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. D-1-DC-12-200761, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Gary Noria guilty of driving while intoxicated with a child passenger, a state jail felony. *See* Tex. Penal Code § 49.045. The jury assessed punishment at 24 months' confinement and a $5,000 fine. The trial court rendered judgment on the jury's verdict. In a single point of error on appeal, Noria argues that the trial court erred by admitting evidence of a blood test based on a blood specimen obtained from Noria without his consent and without a warrant. We will affirm the trial court's judgment.

## BACKGROUND

On February 13, 2012, a car Noria was driving collided with another vehicle.[1] A child, whom witnesses at trial estimated to be approximately 18 months old, was removed from the car Noria had been driving, and Noria and others were transported to a hospital.

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

At the hospital, a police officer observed what he believed to be indications that Noria was intoxicated. The officer arrested Noria and requested that Noria provide a blood specimen to be tested for alcohol. Noria refused to give a blood specimen, so the officer authorized a mandatory, warrantless blood draw. *See* Tex. Transp. Code § 724.012(b)(2) (peace officer shall require taking of breath or blood specimen if officer arrests person for driving while intoxicated with child passenger). Noria's blood specimen was collected and tested, and the test results showed that Noria was intoxicated. *See* Tex. Penal Code § 49.01(2)(B) (defining "intoxicated" as "having an alcohol concentration of 0.08 or more").

When the State attempted to introduce evidence concerning this mandatory blood draw at trial, Noria objected that his blood specimen was obtained in violation of the Fourth Amendment to the United States Constitution. The trial court overruled the objection and admitted the evidence. The jury found Noria guilty, and this appeal followed.

## DISCUSSION

### *Standard of review*

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will uphold the trial court's decision if it is supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

If we conclude that the trial court abused its discretion by admitting evidence obtained in violation of the Fourth Amendment, we must subject this constitutional error to the harm analysis

set forth in Texas Rule of Appellate Procedure 44.2(a). *Hernandez v. State*, 60 S.W.3d 106, 106 (Tex. Crim. App. 2001); *see also Long v. State*, 203 S.W.3d 352, 353 (Tex. Crim. App. 2006). Under Rule 44.2(a)'s harmless-error analysis, we must reverse the judgment unless, after reviewing the record as a whole, we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). Constitutional error does not contribute to the conviction or punishment if the jury's verdict would have been the same even if the erroneous evidence had not been admitted. *See Clay*, 240 S.W.3d at 904; *Nordstrom v. State*, No. 03-12-00012-CR, 2014 WL 1910277, at *3 (Tex. App.—Austin May 8, 2014, no pet.) (mem. op., not designated for publication). Although not exclusive considerations, factors to consider in the harm analysis include the nature of the error, whether it was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to it in the course of its deliberations. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011); *Nordstrom*, 2014 WL 1910277, at *4.

*Analysis*

Noria's blood specimen was taken without his consent and without a warrant. The Texas Transportation Code contains an implied-consent provision "establishing implied consent for all drivers arrested on suspicion of DWI" and a mandatory-blood-draw provision under which, in enumerated circumstances, "even if a suspect refuses, an officer is required to obtain a specimen." *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *6 (Tex. Crim. App. Nov. 26, 2014); *see* Tex. Transp. Code §§ 724.011 (implied-consent provision), .012(b) (mandatory-blood-draw provision). These circumstances include when, as in this case, a suspect is arrested for driving while

3

intoxicated with a child passenger. *Id.* § 724.012(b)(2); *see also id.* § 724.012(b)(1)(C) (requiring breath or blood collection when suspect involved in accident and officer reasonably believes that as a result of the accident an individual other than suspect has been transported to hospital).

Noria argues that these provisions of the transportation code are unconstitutional, citing *Missouri v. McNeely* ___ U.S. ___ 133 S. Ct. 1552 (2013). In *McNeely*, the United States Supreme Court considered "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." *McNeely*, 133 S. Ct. at 1556 (op. of Sotomayor, J.). The Court held that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case . . . it does not do so categorically," and therefore, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at 1563.

The court of criminal appeals has recently addressed "whether the warrantless, nonconsensual drawing of blood from an individual suspected of driving while intoxicated, conducted pursuant to the implied-consent and mandatory-blood-draw provisions in the Texas Transportation Code, violates the Fourth Amendment." *Villarreal*, 2014 WL 6734178, at *1. The court concluded "that the warrantless, nonconsensual testing of a DWI suspect's blood does not categorically fall within any recognized exception to the Fourth Amendment's warrant requirement, nor can it be justified under a general Fourth Amendment balancing test." *Id.*

In this case, however, we do not reach Noria's constitutional arguments because, even assuming without deciding that the trial court abused its discretion by admitting the mandatory-

4

blood-draw evidence, we conclude beyond a reasonable doubt that the jury's verdict would have been the same if that evidence had not been admitted. *See* Tex. R. App. P. 44.2(a); *see also Tha Dang Nguyen v. State*, 359 S.W.3d 636, 645–46 & n.41 (Tex. Crim. App. 2012) (courts should not decide questions of constitutionality unless such determination is necessary to decide case). Two considerations support our conclusion. First, the mandatory-blood-draw evidence was cumulative because the jury heard evidence of a separate blood test that also indicated Noria was intoxicated. *See Long*, 203 S.W.3d at 353 (court of appeals should have considered whether illegally obtained evidence was cumulative when performing harm analysis); *Biera v. State*, 391 S.W.3d 204, 211–12 (Tex. App.—Amarillo 2012, pet. ref'd) (considering whether challenged evidence was cumulative). Second, the evidence the State presented in addition to the blood-test results was sufficient to support the jury's finding that Noria was intoxicated.

Medical records produced by the hospital where Noria was examined after the collision show that the hospital collected a blood specimen from Noria and tested the specimen for alcohol. A "Serum Toxicology" report included in the medical records indicates that Noria's ethanol level was 262 mg/dL. A chemist testified at trial that an ethanol level of 262 mg/dL is equivalent to a blood alcohol content (BAC) of approximately 0.207 to 0.251. The hospital's test therefore indicated that Noria's BAC was far above the 0.08 legal limit for driving in Texas. *See* Tex. Penal Code § 49.01(2)(B). The result was similar to the result of the mandatory-blood-draw test, which indicated a BAC of 0.232.

Although Noria objected to the admission of evidence concerning the police department's mandatory-blood-draw test, he did not object when the State offered, and the trial court

admitted, Noria's medical records from the hospital. Noria also failed to object when the State's witness testified concerning the hospital's blood test and when the State referred to the two separate blood tests in its closing argument. To the extent Noria has any argument on appeal concerning the trial court's admission of the hospital's blood test as evidence, he has not preserved this complaint.[2] *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("To preserve error in admitting evidence, a party must make a proper objection and get a ruling on that objection. In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection.") (footnotes omitted). Moreover, even if we could construe Noria's objections at trial to refer to both of the blood tests, any error in the admission of the hospital's test was cured because Noria failed to object to the medical records and the corresponding testimony.[3] *See id.* ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection.") (footnote omitted); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *Salazar v. State*, No. 12-13-00192-CR, 2014 WL 5511397, at *4 (Tex. App.—Tyler Aug. 29, 2014, no pet.) (mem. op., not designated for publication) (defendant waived prior objection to blood-test evidence);

---

[2] Moreover, Noria's appellate briefs do not mention the hospital's blood test. *See* Tex. R. App. P. 33.1.

[3] We also note that Texas courts have upheld against Fourth Amendment challenges the admission of blood-test evidence that was collected for medical reasons. *See, e.g.*, *State v. Hardy*, 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) ("[W]hatever interests society may have in safeguarding the privacy of medical records, they are not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident."); *Murray v. State*, 245 S.W.3d 37, 42 (Tex. App.—Austin 2007, pet. ref'd) (*Hardy* remains good law after enactment of the Health Insurance Portability and Accountability Act of 1996).

*Walker v. State*, No. 2-04-336-CR, 2006 WL 349704, at *7 (Tex. App.—Fort Worth Feb. 16, 2006, no pet.) (mem. op., not designated for publication) (per curiam) (same).

In addition to the two separate blood-test results, the jury heard testimony that Noria exhibited signs of intoxication after the collision, including an odor of alcohol, glassy and bloodshot eyes, mumbling, slurred and confused speech, disorientation, unusual behavior, and drowsiness. *See Harris v. State*, 204 S.W.3d 19, 25 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("Evidence of intoxication may include (1) slurred speech, (2) bloodshot eyes, (3) the odor of alcohol on the person, (4) the odor of alcohol on the breath, (5) unsteady balance, or (6) a staggered gait."); *see also* Tex. Penal Code § 49.01(2)(A) ("'Intoxicated' means . . . not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body . . . ."); *Brister v. State*, 414 S.W.3d 336, 341 (Tex. App.—Beaumont 2013), *aff'd*, 449 S.W.3d 490 (Tex. Crim. App. 2014) ("When based upon facts an experienced officer observes and then describes to the jury, an officer's opinion concerning a person's intoxication provides sufficient evidence of intoxication."). A police officer also testified that while Noria was still in the car after the collision the officer saw two open 16-ounce cans of beer and one closed can attached to a plastic six-pack in the car between Noria's legs and two additional closed 16-ounce cans in the rear seat directly behind the driver's seat. Finally, a paramedic and a police officer each testified that Noria had admitted to them that he had drunk a Four Loko that evening.[4]

---

[4] The police officer further testified, "Four Loko is an alcoholic drink that has, I believe, 12 percent alcohol by volume, and I believe they're 24 ounces. One Four Loko can be equivalent to approximately four to five 12-ounce beers."

In light of the hospital's blood-test results, which were admitted without objection, and the testimony of several witnesses concerning additional evidence of Noria's intoxication, we conclude, beyond a reasonable doubt, that any error the trial court may have committed in admitting the results of the police department's blood test did not contribute to the jury's verdict and therefore did not harm Noria. Accordingly, we overrule Noria's sole point of error.

## CONCLUSION

Having overruled Noria's sole point of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   March 12, 2015

Do Not Publish