

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0260-11 & PD 0261-11

### THA DANG NGUYEN, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, HERVEY and ALCALA, JJ., joined. KELLER, P.J., and KEASLER, J., concurred.

### O P I N I O N

We granted the State's petition for discretionary review to decide if Texas Penal Code Section 3.03(b)(2)(B) authorizes a trial judge to order consecutive sentences when a defendant is originally charged with multiple sexual offenses but pleads guilty, pursuant to a plea bargain, to multiple nonsexual offenses.[1] Both appellant and the State offer plausible,

---

[1] The State's three grounds for review are as follows:

1.    The court of appeals erred in concluding that TEX. PENAL CODE ANN. § 3.03(b)(2)(B) did

but conflicting, interpretations of the statute's text. Because we find that the statutory language is ambiguous, we turn to its legislative history. This history shows that the legislature enacted this provision to ensure that defendants who, pursuant to a plea bargain, are placed on deferred adjudication for certain specified sex offenses are subject to the same requirements, disabilities, and punishments that had previously been applied only to those formally "convicted" of a sex offense. We therefore affirm the judgment of the court of appeals, although for a different reason than that relied upon by the lower court.[2]

## I. Background.

The State filed two separate indictments charging appellant with aggravated sexual assault and sexual assault of two of his daughters. After plea negotiations, the prosecutor added a handwritten injury-to-a-child count to each indictment. Appellant pled guilty to the two counts of injury to a child, which is not a sex offense.[3] The trial judge deferred adjudication and placed appellant on community supervision for five years. The conditions

---

not authorize the trial court to order appellant's sentences to run consecutively.

2. The court of appeals erred in concluding that sentence cumulation under TEX. PENAL CODE ANN. § 3.03(b)(2)(B) requires the cumulation to be part of the plea-bargain agreement because the language of § 3.03(b)(2)(B) imposes no such requirement.

3. The court of appeals erred in concluding that allowing cumulation of appellant's sentences under TEX. PENAL CODE ANN. § 3.03(b)(2)(B), without a plea agreement providing for such cumulation, would violate due process.

[2] *Nguyen v. State*, Nos. 02-09-00443-CR & 02-09-00444-CR, 2010 WL 5395820 (Tex. App.– Fort Worth Dec. 30, 2010) (not designated for publication) (concluding that due process principles prohibited consecutive sentences when defendant pled guilty to two counts of injury to a child).

[3] "Sexual offenses" for purposes of consecutive sentencing are listed in TEX. PENAL CODE 3.03(b)(2)(A), and include both aggravated sexual assault of a child and sexual assault of a child.

of his community supervision included a ban on contact between appellant and his daughters.

Five months later, the State filed a motion to revoke community supervision, alleging that appellant had contacted his daughters in violation of his community-supervision terms. The evidence at the revocation hearing showed that appellant, who had been a Buddhist monk, performed a funeral ceremony at a temple several months after he pled guilty.   His ex-wife and daughters attended that ceremony.  After the ceremony, the family asked one of the daughter's teachers to take a photograph of the family, including appellant, his ex-wife, his two daughters, and his youngest son.

One daughter testified that she thought her father was only prohibited from having "harmful contact" with her and her sister,[4] not from contacting them at all. She said that she and her sister had contact with appellant at least once a week since his community supervision began, but she and her mother took the photograph to the probation officer because her mother was angry that appellant had been seeing another woman.  The trial judge revoked appellant's community supervision based upon the violation of the "no contact" order and sentenced him to "10 years' confinement in each of the two cases, and the Court orders that these cases run consecutively. . . . It is the specific order of this court that you serve two 10-year sentences, one after the other, totaling 20 years."

On appeal, appellant argued that the trial court erred in finding a community-

---

[4] When the trial judge asked one daughter if appellant had ever molested her, she testified that he had done so from when she was in the fourth grade until she was in tenth grade: "He took his finger and went down there."

supervision violation based on contact that was facilitated by appellant's ex-wife and in ordering that the sentences run consecutively. The court of appeals noted a problem with finding a violation based on contact that was initiated by appellant's ex-wife and brought to the State's attention only after she became angry, but it found the evidence sufficient to show a probation violation.[5] However, the court of appeals held that the trial judge had erred in ordering consecutive sentences because "[d]ue process prohibits punishing a person for an offense of which he was not convicted and of which he may have been acquitted or for which he may never have been prosecuted."[6] Since appellant had not bargained for consecutive sentences, the Court held that nonconsensual consecutive sentences based on nonsexual offenses violated federal constitutional due process.[7] The court of appeals reformed the judgment to order the two ten-year sentences to be served concurrently. Two judges concurred without written opinion.

---

[5] *Nguyen*, 2010 WL 5395820 at *1 (concluding that the evidence that appellant's ex-wife "actively participated in creating opportunities for contact between Appellant and the girls" did not render the evidence of appellant's violations insufficient).

[6] *Id.* at *4. The court stated,
We hold that the plain reading of the statute reveals that section 3.03(b)(2)(B) permits the State and a defendant to agree, pursuant to a plea bargain agreement, to allow a defendant to plead to a non-sexual offense against a child and, at the same time, agree that the sentences may be stacked. Due process prohibits punishing a person for an offense of which he was not convicted and for which he may have been acquitted or for which he may never have been prosecuted. Interpreting the statute to allow a due process violation would be absurd.
*Id.* (footnotes omitted).

[7] *Id.*

## II. The Statute and the Parties' Contentions.

Section 3.03(b)(2)(B) of the Penal Code authorizes consecutive sentences when the State charges a defendant with multiple sex crimes arising from the same criminal episode. Before 1997, the Penal Code authorized trial judges to order consecutive sentences only when the defendant committed several intoxication manslaughter offenses in the same criminal episode.[8] In the 1997 session, the Texas Legislature added provisions authorizing trial judges to order consecutive sentences for certain specified sex offenses.[9] The 1997 Act revised Section 3.03(b)(2) to read as follows:

> (b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:
>> (2) an offense:
>> (A) [of online solicitation of a minor, continuous sexual abuse of a child, indecency with a minor, sexual assault, aggravated sexual assault, prohibited sexual conduct (incest), or sexual performance of a child], committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the

---

[8] TEX. PENAL CODE §3.03(b)(1) (Vernon's 1995). Section 3.03 then read:

Sentences for Offenses Arising Out of Same Criminal Episode.
(a) When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently.
(b) If the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of:
    (1) an offense under Section 49.08 [involuntary manslaughter]; or
    (2) an offense for which a plea agreement was reached in a case in which the accused was charged with more than one offense under Section 49.08.

[9] Act of May 31, 1997, 75th Leg., R.S., ch. 667 § 2, eff. Sept. 1, 1997 ("1997 Act").

same section more than once or is convicted of violations of both sections (B) *for which a plea agreement was reached in a case in which the accused was charged with more than one offense* listed in Paragraph (A) committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is charged with violations of the same section more than once or is charged with violations of more than one section.[10]

At issue in this case is the meaning of the italicized words in the statute.[11]  Do those words refer  to a plea bargain for sex offenses (appellant's interpretation) or for a plea bargain for non-sexual offenses as long as the defendant was originally charged with more than one sex offense (the State's interpretation)?

**A. The State's Interpretation.**

The State claims that the statute is unambiguous on its face and argues that its plain language permits the trial judge to impose consecutive sentences for multiple nonsexual offenses if the Defendant was originally charged with qualifying sexual offenses but a plea agreement for nonsexual offenses was reached.

The State relies primarily on the reasoning in *Sikes v. State*,[12] an unpublished memorandum decision from the Austin Court of Appeals.  In *Sikes*, the defendant pled guilty

---

[10] TEX. PENAL CODE §3.03(b) (emphasis added).

[11] We note that the italicized language used in (B)–"for which a plea agreement was reached in a case in which the accused was charged with more than one offense"–was carried over verbatim from the earlier version of the statute dealing with consecutive sentences for plea bargains for multiple intoxication manslaughter offenses.  TEX. PENAL CODE § 3.03(b)(2) (Vernon's 1995) (quoted in full in note 8 *supra*).

[12] No. 03-06-00608-CR, 2007 WL 4269815 (Tex. App.–Austin Dec. 5, 2007, no pet.) (not designated for publication).

to two counts: indecency with a child by contact and attempted indecency with a child by contact, for which he was sentenced to five years in prison and ten years of community supervision.[13] The trial judge had carefully explained that, according to the explicit terms of the plea agreement, Sikes was required to serve the entire five years on the first count before the clock on his ten years of community supervision would begin ticking.[14] Based on this reasoning, the *Sikes* Court concluded that Sikes's "guilty pleas were in accordance with the plea agreement" that called for consecutive sentences, and the defendant had obtained a "most favorable" plea agreement.[15] The court also noted that "[a] careful reading of section 3.03(b)(2)(B) shows that it is applicable when the defendant is merely *charged* with more than one [sex] offense. . . . The key word is *charged,* not convicted."[16] We note that the *Sikes* opinion was unpublished, that it rejected an argument that Sikes's judgment was legally "void," and that Sikes had expressly agreed to consecutive sentences as a part of his plea agreement.

Besides relying on *Sikes*, the State argues the logic of the statutory language,

By its express language, subsection (b)(2)(B) applies to a defendant who

---

[13] *Id*. at *1.

[14] The *Sikes* court recognized that, under our precedent, an attempted offense–such as "attempted indecency with a child by contact"–does not qualify for consecutive sentences under Section 3.03(b). *Id*. at *3 (citing *Parfait v. State*, 120 S.W.3d 348 (Tex. Crim. App. 2003)).

[15] *Id.* at *3-4.

[16] *Id.* at *3. Indeed, that language is crucial because it could mean: (1) charged with a sex offense but convicted of an entirely different, non-sex offense; or (2) charged with a sex offense but placed on deferred adjudication for that sex offense without formal conviction.

was *charged* with an enumerated offense (*e.g.*. aggravated sexual assault or sexual assault committed against a child younger than age seventeen) and was convicted of *an offense for which a plea agreement was reached. Id*. If these requirements are met, then the sentence may run either concurrently or consecutively.[17]

The literal language of the statute could be interpreted in this manner, but such an interpretation leads to strange results and would punish those who are never convicted of any sexual offenses more severely than those who have been formally convicted of a qualifying sexual offense and an attempted sexual offense.[18]

**B. Appellant's Interpretation.**

Appellant argues that nonsexual offenses do not qualify for consecutive sentences under Penal Code 3.03(b)(2)(A); therefore, the statute does not authorize consecutive sentences for any nonsexual convictions, regardless of whether the conviction was obtained through a plea agreement in which the defendant had originally been charged with a sexual offense. He insists that the sexual-offense charges disappeared when the prosecutor added

---

[17] State's Brief at 9.

[18] We have previously held that Section 3.03(b)(2) does not authorize the trial judge to order consecutive sentences when the defendant was formally convicted by a jury of attempted aggravated sexual assault of a child and indecency with a child because the statute does not explicitly include attempted sexual offenses in its list. *Parfait v. State*, 120 S.W.3d 348, 350 (Tex. Crim. App. 2003). It would seem peculiar indeed that consecutive sentences for formal convictions for two child sexual offenses, one of which is an attempted sexual offense, is prohibited, but consecutive sentences for two nonsexual offenses could be served consecutively if they were the result of a plea bargain in which the defendant had originally been charged with sexual offenses. In both situations, the defendant is charged with multiple qualifying sexual offenses, but not found guilty of multiple qualifying sexual offenses. But we need not address the "absurd results" prong of *Boykin* because we resolve the question by analyzing the legislative history of the statute.

counts for nonsexual offenses in the indictment and the parties reached a plea agreement on those nonsexual offenses alone.

Appellant contends that, regardless of whether a defendant consents to consecutive sentences in a plea agreement, Sections 3.03(b)(2)(A) and 3.03(b)(2)(B) authorize consecutive sentences only when those sentences are for qualifying sex offenses. Under appellant's reasoning, the legislature intended to extend the authority to impose consecutive sentences beyond formal "convictions" for sex offenses to include deferred-adjudication plea agreements for sex offenses. Appellant reasons that the "charged with" language means that "the plea agreement" refers to the "more than one" sexual offenses that the State has charged the defendant with committing. Under his logic, the statute's language does not indicate a legislative intent to sever the plea agreement from the sexual-offense charges.

## C. General Principles of Statutory Interpretation.

Statutory interpretation is a question of law that we review *de novo*.[19] In interpreting statutes, we seek to actualize the legislature's collective intent.[20] In doing so, "we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment."[21] If the plain language is clear and unambiguous, our analysis ends because "the Legislature must be understood to mean

---

[19] *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

[20] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[21] *Id.*

what it has expressed, and it is not for the courts to add or subtract from such a statute."[22]

We give effect to the results of that unambiguous language unless doing so results in absurd

consequences.[23] But when two alternative, plausible explanations of the "plain language" of

a statute so conflict as to make the statute's language ambiguous, we may consult extra-textual

factors, such as the legislative history of the statute, to resolve the ambiguity.[24]

Distilled to its essence, the State's argument is that "[i]t is the mere accusation" of

sexual offenses that allows consecutive sentences.[25] Appellant's counter argument is that any

consecutive sentence must result from a plea bargain to sexual offenses.[26] Both the State and

appellant present plausible interpretations of the statute, so we look to the legislative history

to effectuate the collective intent of the legislature.

---

[22] *Id.* (internal quotation marks omitted).

[23] *Id*. at 785–86.

[24] *See Shipp v. State*, 331 S.W.3d 433, 439 (Tex. Crim. App. 2011) ("Given the ambiguity we perceive in the statutory language, and in order to make sure we do not defeat the legislative purpose, we think it acceptable to consult extra-textual factors. One extra-textual factor we may consider is legislative history.") (footnotes omitted); *Mahaffey v. State*, 316 S.W.3d 633, 637-38 (Tex. Crim. App. 2010); *see generally* TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . legislative history[.]").

[25] *Nguyen*, 2010 WL 5395820 at *4.

[26] *Id*. at *3. As appellant put it in his Brief, "He plea bargained for two lesser, non-stackable charges and the State chose not to prosecute the greater, stackable charges. The simple truth is that the trial court stacked the unstackable and the Court of Appeals correctly knocked it down." Appellant's Reply Brief at 8.

### III. Legislative History of the 1997 Changes to Section 3.03.

The 1997 legislature, in part of an omnibus bill, amended Penal Code Section 3.03 by adding subsections (b)(2)(A) & (B) while making numerous other changes to the criminal law concerning sex offenses. The entire omnibus bill adding the new subsection is titled,

> AN ACT relating to the civil and criminal consequences of a grant of deferred adjudication for a sexual offense or a sexually assaultive offense and to the prosecution of certain defendants charged with or convicted of those offenses.[27]

The original Senate Bill, SB 381, did not include the "prosecution of certain defendants charged with or convicted of those offenses language," nor did it originally amend Section 3.03.[28] Only after a Senate Justice Committee hearing in which two prosecutors testified did the Senate add Section 2 of the Act, which amended Section 3.03 of the Penal Code. The result was Committee Substituted Senate Bill 381.[29]

The five other substantive sections of the Act all added provisions to various penal, procedural, and civil statutes dealing with deferred adjudication for sex offenses. The Legislature tightened up procedures for placing defendants on deferred adjudication for these offenses and amended statutes to ensure that those sex offenders given deferred adjudication were, in some instances, treated as if they had been formally convicted of a sex offense. [30]

---

[27] 1997 Act, *supra* note 9 at p. 2250.

[28] Tex. S.B. 381, 75th Leg., R.S. (1997).

[29] Tex. C.S.S.B. 381, 75th Leg., R.S. (1997).

[30] For example, Section 1 authorized the trial judge to put sex-offense defendants on deferred adjudication only if he makes an explicit finding that doing so is in the victim's best interest. 1997 Act at 2250 (amending TEX. CODE CRIM. PROC. art. 42.12). Section 2 added

Taken together, the Act's language and provisions show a legislative intent to extend certain provisions applicable to sex offenders that had applied only to those with formal convictions for sex offenses to those who are granted deferred adjudication.  Most of the provisions deal with sex offenders who commit crimes against children.   At the behest of prosecutors, Sections 3.03(b)(2)(A) & (B) were added to give trial judges the authority to cumulate sentences for multiple sex offenses against children that were part of a single criminal episode.  Subsection (A) applied to those who were formally convicted of offenses and subsection (B) applied to those who were placed on deferred adjudication for sex offenses.

In the bill analysis by the House Research Organization for C.S.S.B. 381, the authors give a general background concerning the use of deferred adjudication for both sexual and nonsexual offenses and then provide a brief explanation of each section.  Concerning the proposed changes to Section 3.03, the drafters explained,

> **Trying multiple offenses together or separately.** If a person were found guilty of or entered into a plea bargain for two or more of certain specified sex offenses occurring in the same criminal episode, the sentences could run concurrently (at the same time) or consecutively (one after the other). This

---

§3.03(b)(2)(B) to the Penal Code. Section 3 limited severance of charges for child sex-offense charges. *Id.* at 2252 (amending TEX. PENAL CODE §3.04).  Section 4 authorized an habitual-offender finding based on deferred adjudication for a child sex offense, when before only a formal conviction authorized such a finding. *Id.* (amending TEX. PENAL CODE § 12.42). Section 5 clarified that deferred adjudication for child sex offenses, as well as a formal conviction, will result in newspaper publication of the defendant's sex-offender status. *Id.* (amending TEX. REV. CIV. STAT. art 6252-13c.1). Section 6, the final substantive section, authorized newspaper republication based on deferred adjudications, as well as formal convictions, when a defendant moves to a new location. *Id.* (amending TEX. REV. CIV. STAT. art 6252-13c.1).

would apply to the following offenses committed against a victim who was younger than 17 years old: indecency with a child, sexual assault, aggravated sexual assault, prohibited sexual conduct or sexual performance by a child.[31]

The bill analysis states that the defendant must have "entered into a plea bargain for two or more of certain specified sex offenses occurring in the same criminal episode" to authorize the trial judge to impose consecutive offenses. In a later section, the bill analysis sets out the position of the bill's supporters concerning the proposed amendment to Section 3.03(b)(2)(A) & (B):

> CSSB 381 would give courts the flexibility *to order sentences for multiple sex offenses* from the same criminal episode to run concurrently or consecutively. Currently, if multiple sex offenses are tried together, defendants serve their sentences concurrently. This can result in an inappropriately light punishment in which justice is not served for someone found guilty of multiple sex offenses against children, CSSB 381 would allow courts this option only if the offenses were part of the same criminal episode.[32]

This indicates that the supporters of the amendments to Section 3.03(b)(2)(A) & (B) believed that the amended statute would apply only to those who have been sentenced for multiple sex offenses–not for those who have been charged for sex offenses but sentenced for some other, nonsexual offenses.

Opponents to the bill argued that "[s]pecial criminal statutes and exceptions should not be carved out for sex crimes. Deferred adjudication for sex crimes should continue to be

---

[31] House Research Organization, Bill Analysis for House Criminal Jurisprudence Committee, C.S.S.B. 381 (May 20, 1997) ("1997 Bill Analysis") (*available at*: http://www.lrl.state.tx.us/scanned/hroBillAnalyses/75-0/SB381.PDF).

[32] *Id*. at 4 (emphasis added).

treated in the same manner as for other offenses."[33]  Opponents stated that "CSSB 381 would give too much power to the state and treat defendants unfairly by taking away defendants' right to have multiple offenses tried separately and by giving judges the ability to make defendants serve sentences consecutively."[34]

Again, there was no suggestion by anyone–the legislators, bill analysis drafters, supporters, or opponents–that the amendment to Section 3.03 (or the other changes in the omnibus bill) applied to those who had originally been charged with sex offenses but who were convicted of, found guilty of, or pled guilty to unrelated nonsexual offenses.  The Bill analysis and statements by supporters and opponents indicate that the purpose of the Section was to give trial judges the authority to cumulate, when appropriate, sentences for certain sex offenders, regardless of whether that sentence was the result of a formal "conviction" or the result of a deferred-adjudication plea agreement.  At no point do the omnibus bill or its legislative history suggest that prosecutors could charge a defendant with qualifying sexual offenses and then reach a plea bargain on totally different, nonsexual offenses but make the defendant serve consecutive sentences for the nonsexual offenses.

Furthermore, we note that, in 1995, the legislature enacted Section 3.03(b)(2) which stated that a trial judge had the authority to order consecutive sentences for multiple intoxication offenses if "each sentence is for a conviction of . . . *an offense for which a plea*

---

[33] *Id.* at 5.

[34] *Id.*

*agreement was reached in a case in which the defendant was charged with more than one offense* under Section 49.08."[35]  This is precisely the same language that was carried forward in Section 3.03(b)(2)(B) to apply to child sex offenses.  Thus, the ambiguous language found in Section 3.03(b)(2)(B) was simply carried over from that same ambiguous language adopted for purposes of allowing consecutive sentences for multiple intoxication-manslaughter convictions or plea bargains before it was made applicable to sex offenses.  There has never been any suggestion in the legislative history or judicial cases that the intoxication-manslaughter provision allows the imposition of consecutive sentences when a defendant was originally charged with intoxication-manslaughter offenses but pled guilty, pursuant to a plea bargain, to some other offenses such as DWI.[36]  All of the legislative commentary for both the amendments creating 3.03(b)(2) and 3.03(b)(2)(B) assumes that the defendant was convicted of, or entered a plea bargain for, the targeted offenses: intoxication manslaughter or child sex offenses.

---

[35] Act of May 26, 1995, 74th Leg., R.S., ch. 596, § 1, 3435, 3435 (current version at TEX. PENAL CODE § 3.03(b)(1)).  The Senate Research Center bill analysis to that provision, HB 93, states that the legislative intent is to increase "the penalty for fatally injuring more than one person in a motor vehicle accident if the person is intoxicated."  It explains that Section 3.03(b) "[a]uthorizes the sentence, if the accused is found guilty of more than one offense arising out of the same criminal episode, to run concurrently or consecutively if each sentence is for a conviction of an offense under Section 49.08 or an offense for which a plea agreement was reached in a case in which the accused was charged with more than one offense under Section 49.08." *Id.*

[36] *See generally, Yvanez v. State*, 991 S.W.2d 280, 282 (Tex. Crim. App. 1999); *Papke v. State*, 982 S.W.2d 464 (Tex. App.–Austin 1998, pet. ref'd) (upholding constitutionality of Section 3.03(b), which authorized consecutive sentences for multiple intoxication manslaughter convictions arising out of a single criminal episode).

Therefore, we conclude that the legislative history indicates that the amendments to Sections 3.03(b)(2)(A) & (B) in the 1997 omnibus act dealing with deferred adjudication for sex offenders authorize a trial judge to cumulate sentences when a defendant has been formally found guilty of or "entered into a plea bargain for two or more of certain specified sex offenses occurring in the same criminal episode."[37] The statute does not authorize a trial judge to cumulate sentences when a defendant has not been found guilty of multiple specified sexual offenses,[38] or when he has entered into a plea bargain for nonsexual offenses, regardless of the charges in the original indictment.

This interpretation of Section 3.03(b)(2)(B) ensures that, in a case where sexual offense charges are formally dropped or are never pursued, a plea bargain on nonsexual offenses will result only in concurrent sentences. Defendants who reach plea agreements for nonsexual offenses will be treated like those who were never charged with sexual offenses at all. This similarity of treatment is appropriate because in neither situation has the State proved the guilt of the sexual offenses, either by trial or a defendant's guilty pleas to those offenses.[39]

---

[37] 1997 Bill Analysis at 2.

[38] *See Parfait v. State*, 120 S.W.3d 348, 350 (Tex. Crim. App. 2003).

[39] At oral argument, the State suggested that consecutive sentences for nonsexual offenses are the price a defendant pays for a favorable plea bargain when he is charged with sexual offenses (and, by implication, intoxication-manslaughter charges). We find the argument that the legislature had this price in mind as its intent in enacting both Section 3.03(b) in 1995 and Section 3.03(b)(2)(B) in 1997 unpersuasive. When the State charges sexual offenses and the defendant pleads guilty to several nonsexual offenses, both parties obtain a benefit. The defendant does not face the stigma and liabilities that flow from sexual-offense convictions, liabilities that include consecutive sentences. The State has no need to establish difficult-to-prove sexual offense charges, charges made especially difficult because proving them requires bringing

Finally, we interpret the meaning of the language of Section 3.03(b)(2)(B) based on legislative history because doing so avoids grappling with the potential constitutional due process problem that legitimately concerned the court of appeals in this case.[40] "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."[41] Interpreting the language of Section 3.03(b)(2)(B) to refer only to plea bargain agreements for child sex offenses avoids the need to address the constitutional question.

We therefore agree with the Court of Appeals's decision to modify the trial court's judgment and order appellant's sentences on his two convictions for injury to a child to run concurrently. We affirm the judgment of the court of appeals.

Delivered: February 8, 2012
Publish

---

a young and frequently traumatized victim into court. Society benefits from this protection of child sexual-offense victims as well, and, in its 1997 Act, the legislature specifically limited charge severance in sexual-offense prosecutions because of "the difficulty of multiple trials for child victims." 1997 Act, Bill Analysis at 4.

[40] *Nguyen*, 2010 WL 5395820 at *4 (concluding that due-process principles prohibited punishing a defendant as if he had been convicted of an offense "of which he was not convicted and of which he may have been acquitted or for which he may never have been prosecuted").

[41] *Spector Motor Service v. McLaughlin*, 323 U.S. 101, 105 (1944); *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006) (quoting *Spector*); *Ex parte Salfen*, 618 S.W.2d 766, 770 (Tex. Crim. App. 1981) ("[T]he constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised.").