

### NUMBER 13-14-00291-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JENNIFER PENA,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                           **Appellee.**

---

### On appeal from the 156th District Court
### of Live Oak County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria**
**Memorandum Opinion by Justice Longoria**

By three issues, appellant Jennifer Pena challenges the trial court's judgments revoking her deferred-adjudication community supervision and imposing two concurrent sentences of two years' imprisonment in a state jail facility.  We affirm as modified.

## I. BACKGROUND

The State charged appellant under a single cause number with possession of less than one gram of cocaine, a state-jail felony (Count 1), and tampering with physical evidence, a third-degree felony (Count 2). *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West, Westlaw through 2013 3d C.S.); TEX. PENAL CODE ANN. § 37.09(a)(1), (c) (West, Westlaw through 2013 3d C.S.). The charges arose from a traffic stop on November 23, 2011, in George West, Texas, during which police found a bag containing a white powdery substance on the ground near appellant after police asked her to exit the front passenger seat of the vehicle. The contents of the bag later tested positive for cocaine.

Pursuant to a plea agreement, the trial court signed an order placing appellant on deferred-adjudication community supervision for a term of five years. In the same order, the trial court ordered appellant to pay $140 in restitution on Count 1, a $1,500 fine on Count 2, and court costs. On April 2, 2014 the State filed two motions to revoke alleging nine identical violations on each count of the terms and conditions of appellant's community supervision. The State alleged that appellant: (1) failed to report to her supervision officer; (2) failed to attend substance abuse treatment; (3) failed to complete substance abuse treatment; (4) failed to submit to urinalysis testing; (5) failed to pay the fine and court costs; (6) failed to pay restitution; (7) failed to pay community supervision fees; (8) failed to attend moral reconation therapy; and (9) failed to complete moral reconation therapy.

Appellant was taken into custody on April 6, 2014. She filed an affidavit of indigence on April 9, 2014. Appellant averred in the affidavit that her three minor

daughters resided with her and that she paid $500 a month in child support. On April 10, 2014, appellant sent a letter to the district court asking to be notified of the date of her court appearance so she could "get back to my kids, work, and home." The trial court held a hearing on the State's motion to revoke on April 25, 2014. At the beginning of the hearing, appellant plead "true" to all of the allegations contained in the State's motions. Appellant's counsel called appellant to testify to explain why she violated the terms and conditions of her community supervision. During this testimony, appellant stated that her monthly bills included "child support." The trial judge asked whether she had custody of her children. Appellant responded, "No, not at the moment, I have visitation and joint [custody]."

Based on appellant's pleas of true, the trial court found that appellant violated the terms and conditions of her supervision. The State recommended that the court place appellant in an Intermediate Sanction Facility's cognitive program to address her decision-making abilities. Appellant's counsel had no objection, but recalled appellant to the stand to testify regarding her requested sentence. The following exchange occurred between appellant, her counsel, and the trial court:

[Defense]: What is it that you're asking the Court to consider today?

[Appellant]: For a stronger probation. I mean, I'll do house arrest, monitor, the works, report every week. I have to get back to my girls. There is a CPS case against the dad and it's horrible. They're missing school, they were being left home alone while they work on like holidays and weekends and stuff. I have an eleven, seven and a five-year old and there's six kids in their house and they're all being left alone. There's been a past of abuse from their stepmother. She's been removed from the house by CPS and then she was gone for like three months and then she came back and she took her classes. My girls are begging for me. Before I came in I had my life in order, things were going great. I was getting to where I needed to

3

be and my girls were begging for me, mom we don't want to live with daddy anymore. They were telling me stories that was happening to them. Just, you know, their physical appearance is horrible—

The Court: Okay, I've heard enough. Ms. Pena, you have written a letter which is in the Court's file saying that you have three children, that you are a single mom and you need my help. While on the face of that, that is true, but you have led me to believe through that letter that you had custody of these children and you do not.

[Appellant]: No, not full custody.

The Court: I don't want to hear any more about that. You have deliberately misled this Court.

[Appellant]: No, I don't have full custody of them.

The Court: Anything further?

[Defense]: Ms. Pena, is there anything else you want the Court to consider? You're asking for house arrest with an ankle monitor?

The Court: I don't want to hear anything else.

[Defense]: What are you going to do about getting to the classes?

[Appellant]: My license is, I think, it was February or March that I could get it back and get my license so I could take myself to class to get to, you know, where I need to be. I can't depend on anybody else, all I can depend on is myself.

Appellant continued to testify following this exchange. At the end of the hearing, the trial court orally pronounced sentence at two years' imprisonment in state jail on each count, no fine or restitution, and court costs. The court later issued a separate written judgment of conviction for each count. The judgment for Count 1 assessed $359 in court costs, and the judgment for Count 2 assessed $299 in court costs. The district clerk

4

issued a single certified bill of costs that assessed the total amount of costs in each judgment as $658.

## II. DUE PROCESS

Appellant asserts in her first issue that the trial court denied her due process by arbitrarily refusing to consider the full range of punishment. We disagree.

### A. Preservation of Error

As a preliminary matter, the State argues that appellant has waived this issue by failing to object. The State analogizes to *Rhoades v. State*, where the Texas Court of Criminal Appeals concluded that the defendant waived a claim that a sentence constituted cruel and unusual punishment by failing to object. 934 S.W.2d 113, 120 (Tex. Crim. App. 1996). However, the Texas Court of Criminal Appeals recently decided that no objection is necessary to preserve an issue that the trial court arbitrarily refused to consider the full range of punishment in a revocation hearing. *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). We reject the State's waiver argument and will address appellant's first argument on the merits. *See id.*

### B. Applicable Law

"Due process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A court's arbitrary refusal to consider the entire applicable range of punishment denies the defendant due process. *Grado*, 445 S.W.3d at 739; *Ex parte Brown*, 158 S.W.3d 449, 454 (Tex. Crim. App. 2005). In the absence of a clear showing to the contrary, we will presume that the trial judge was neutral, detached, and unbiased. *Brumit*, 206 S.W.3d at 645 (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim.

5

App. [Panel. Op.] 1982)). Indications that the trial judge was not biased include: (1) the record reflects that the trial court heard extensive evidence before assessing punishment; (2) the record contains explicit evidence that the trial court considered the full range of punishment; and (3) the trial court made no comments indicating that it considered less than the full range of punishment. *See id.*

## C. Discussion

Appellant argues that the record rebuts the presumption that the trial judge was impartial because "the record clearly shows [that] the trial court did not consider the full range of punishment nor the evidence presented once she became convinced that [appellant] had attempted to deceive the court." Appellant, however, does not direct us to any evidence in the record that the trial court did not consider the entire applicable range of punishment or refused to consider any evidence. The record reflects only that the trial court stated that she did not wish to hear more about the living situation of appellant's children after permitting appellant to testify at length on that matter. Furthermore, the trial court permitted appellant to continue testifying until her counsel passed the witness and rested. In the absence of any indication that the trial court did not consider the full range of punishment, we must presume that the trial court was fair and impartial. *See id.* We overrule appellant's first issue.

## III. COURT COSTS

By her second issue, appellant challenges the assessment of courts costs against her in both judgments. She asserts that section 102.021 of the Texas Government Code is ambiguous regarding whether costs are to be assessed each time a person is convicted

of an offense or each time a criminal trial terminates in one or more convictions. *See* TEX. GOV'T CODE ANN. § 102.021 (West, Westlaw through 2013 3d C.S.). We disagree.

## A. Standard of Review and Applicable Law

Statutory interpretation is a question of law that we review de novo. *Tha Dang Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim. App. 2012). Our goal in interpreting a statute is to effect the collective intent of the Texas Legislature. *Id.* We begin our analysis with language of the statute and "attempt to discern the fair, objective meaning of that text at the time of its enactment." *Reynolds v. State*, 423 S.W.3d 377, 382 (Tex. Crim. App. 2014) (citing and quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). If the statute's language is clear and unambiguous, we will give effect to its plain meaning unless that interpretation would lead to absurd consequences that the Legislature could not have intended. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Terms not defined in a statue are to be given their "plain and ordinary meaning." *Id.* at 171.

The Texas Code of Criminal Procedure requires that a convicted defendant pay court costs. TEX. CODE CRIM. PROC. ANN. arts. 42.15 (applying when the punishment is only a fine), 42.16 (applying when punishment imposed is other than a fine) (West, Westlaw through 2013 3d C.S.); *see Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014). Only statutorily-authorized court costs may be assessed against a defendant. TEX. CODE CRIM. PROC. ANN. art. 103.002. All costs assessed against a defendant "can be separated into two categories: (1) mandatory costs and (2) discretionary costs." *Johnson*, 423 S.W.3d at 389. Section 102.021 of the Texas Government Code provides a mandatory, non-exclusive list of costs in the Texas Code

of Criminal Procedure that "[a] person convicted of an offense shall pay." TEX. GOV'T CODE ANN. § 102.021 (West, Westlaw through 2013 3d C.S.); *see Armstrong v. State*, 340 S.W.3d 759, 763 (Tex. Crim. App. 2011) (observing that the assessment of costs in section 102.021 of the Texas Government Code is mandatory).

### B. Discussion

Appellant asserts that the trial court erred by assessing court costs against her in both judgments. Appellant argues that the phrase "a person convicted of an offense shall pay" in section 102.021 of the Texas Government Code is ambiguous because it could mean either that the court must assess costs for each *offense* on which the defendant is convicted or for each *proceeding* that ends with a conviction on one or more offenses. The State responds that by issuing two judgments, the trial judge was obligated to assess court costs in both.

We reject appellant's argument that the statute is ambiguous. "A statute is ambiguous when it is reasonably susceptible to more than one understanding." *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014) (internal quotations omitted); *Baird v. State*, 398 S.W.3d 220, 229 (Tex. Crim. App. 2013). The statute provides that "[a] person convicted of an *offense* shall pay" a non-exclusive list of costs provided for in the Texas Code of Criminal Procedure. TEX. GOV'T CODE ANN. § 102.021 (emphasis added). The Legislature opted to use the term "offense" in the statute, the ordinary meaning of which is "a violation of the law; a crime." BLACK'S LAW DICTIONARY 1187 (9th ed. 2009). Thus, the plain meaning of the words the Texas Legislature chose for the statute refer to conviction for a particular offense and not a proceeding or hearing. *See Dobbs*, 434 S.W.3d at 171 (observing that we give terms not defined by the statute their common and

ordinary meaning). We see nothing in the statute which makes it susceptible to a different meaning, and appellant does not explain further.[1] Applying the plain meaning of the words of the statute as we must, we conclude that the trial court did not err in assessing court costs in both judgments. *See id.* at 170. We overrule appellant's second issue.

## IV. MODIFICATION

By her final issue, appellant requests that we modify the judgment. On Count 1, appellant requests that we modify the judgment to reflect that: (1) appellant's sentence on this count of two years' imprisonment was not the result of a plea bargain; and (2) the trial court ordered appellant to pay court costs but no fine or restitution. Appellant requests that we modify the judgment on Count 2: (1) to reflect that the correct penal code section of the charged offense was section 37.09(a)(1); (2) to reflect that the court ordered that appellant serve the sentence on Count 2 in a state jail facility; and (3) to delete the notation that the trial court assessed a $1,500 fine. Appellant further requests that we modify both judgments to reflect the trial court's findings as to how she violated the terms and conditions of her community supervision. The State does not oppose appellant's requests.

This Court has the authority to modify the judgment when we have the information to do so, *see* TEX. R. APP. P. 43.2(b), including when the written judgment is inconsistent with the trial court's oral pronouncement of sentence. *See Forcey v. State*, 265 S.W.3d 921, 925 (Tex. App.—Austin 2008, no pet.); *see also Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014) (restating the general rule that "when there is a conflict between

---

[1] Appellant spends the remaining portion of her second issue discussing the legislative history of several provisions of the Texas Penal Code and the Texas Government Code. However, when construing a statute, appellate courts may not consider extrinsic aids such as legislative history without first concluding that the meaning of a statute is ambiguous. *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014).

the oral pronouncement [of sentence] and the written judgment, the oral pronouncement controls.").

With one exception, we conclude that the record supports appellant's requests.[2] Accordingly, we modify the judgment on Count 1 to reflect that the sentence of imprisonment for two years was not imposed pursuant to a plea bargain and that the trial court did not assess any fine or restitution on this count. We modify the judgment on Count 2 to reflect that appellant was convicted under section 37.09(a)(1) of the Texas Penal Code, that appellant was sentenced to two years' imprisonment in a state jail facility, and that there was no fine assessed. *See* TEX. PENAL CODE ANN. § 37.09(a)(1). However, we decline appellant's request to modify the judgment to reflect the trial court's findings because we do not have the necessary information; the trial court did not specify which of the alleged violations it relied on in revoking appellant's probation.[3] With the forgoing exception, we sustain appellant's third issue.

---

[2] The record reflects that the trial court orally pronounced sentence as follows:

The Court is going to revoke the community supervision for [appellant] and sentence her in count one to two years in the State Jail division of the Texas Department of Criminal Justice. As to count two, the third-degree felony, two years to run concurrent with the State Jail felony sentence. There will be no fine, there will be no restitution, court costs will be assessed.

[3] A defendant whose probation is revoked has a due process right to a written statement of "the fact finder as to the evidence relied on and the reasons for revoking probation." *Ex parte Carmona*, 185 S.W.3d 492, 495 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, (1973)). However, an order revoking probation is sufficient without a recitation of the findings and conclusions on which the factfinder acted unless the appellant timely requested that the trial court to make such findings. *King v. State*, 649 S.W.2d 42, 46 (Tex. Crim. App. 1983) (en banc). The record does not reveal that appellant made any such request. *See id.*; *see also Lindsay v. State*, No. 03-10-00817-CR, 2012 WL 3797604, at *2 n.1. (Tex. App.—Austin Aug. 28, 2012, no pet.) (mem. op, not designated for publication) (collecting numerous cases applying the holding in *King*).

## V. Conclusion

We affirm the judgment of the trial court as modified.


NORA L. LONGORIA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of June, 2015.