

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0963-19

## HARRY DONALD NICHOLSON, JR., Appellant

**v.**

## THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### NAVARRO COUNTY

RICHARDSON, J., delivered the opinion in which KELLER, P.J., and HERVEY, NEWELL, and SLAUGHTER, JJ., joined. YEARY, J., filed a concurring opinion. KEEL, J., concurred. WALKER and MCCLURE, JJ., dissented.

### O P I N I O N

Texas' current Evading Arrest or Detention statute reads: "A person commits an offense if he intentionally flees from a person he *knows* is a peace officer or federal special investigator attempting *lawfully* to arrest or detain him."[1] The question is whether the

---

[1] TEX. PEN. CODE § 38.04(a) (emphasis added).

1

government must prove a defendant knew that the attempted arrest was lawful. The answer is no. There is a dispute among the courts of appeals on whether the *mens rea* of knowledge applies to the lawfulness of the attempted arrest or detention. Nevertheless, the statute's history and purpose do not support the application of a suspect's knowledge to the lawfulness of a stop or arrest. Furthermore, requiring laypersons to comprehend the technical jurisprudence on when an arrest or detention is lawful is absurd. This leads us to conclude that the 1993 amendment that moved the lawfulness of the stop from an exception to prosecution to being part of the evasion offense was a non-substantive change.

**Background**

While sitting in his truck, parked at a gas station parking lot, Harry Donald Nicholson Jr. began throwing out tissues via his vehicle's window. An officer observed the litter on the ground and approached Appellant, asked for his information, and told him to pick up the tissues. Appellant provided the officer his driver's license number and exited the truck and began picking up the litter. The officer relayed Appellant's information to dispatch.

Dispatch responded that it was sending additional backup because Appellant had active felony warrants (including for evading arrest). It was disputed whether Appellant heard the dispatch over the radio mentioning the active warrants. When Appellant was done putting the litter into the trash can, the officer moved to handcuff Appellant and arrest him. However, Appellant maneuvered away from the officer and managed to get back to his truck, start the vehicle, and drive away. He did not get far.

Another officer's vehicle just entered the gas station parking lot. Appellant crashed into the police car. That officer was injured and Appellant was apprehended.

**Procedural History**

Appellant was charged with aggravated assault of a public servant and evading arrest or detention with a vehicle. A Navarro County jury convicted Nicholson on both charges and sentenced him to 60 years confinement to be served concurrently. In a single opinion adjudicating two appellate cause numbers, the Tenth Court of Appeals affirmed the aggravated assault charge but found that improper jury instructions regarding the evading arrest or detention charge egregiously harmed Nicholson.[2] The Court of Appeals explained that the trial court did not include a required element of the offense in the jury charge—that Appellant *knew* that the officer was attempting to arrest or detain him. However, because the majority found the evidence sufficient to support his conviction for evading, the lower appellate court reversed and remanded the case for a new trial on the evading charge only.[3]

Appellant filed twin petitions for discretionary review challenging both rulings under consecutive cause numbers. Discretionary review for his aggravated assault

---

[2] *Nicholson v. State*, 594 S.W.3d 480, 481, 490 (Tex. App—Waco 2019) (adjudicating appellate cause numbers 10-18-00360-CR and 10-18-00359-CR).

[3] In dissent, Chief Justice Gray argued that the knowledge *mens rea* should also apply to the lawfulness of the arrest or detention. Chief Justice Gray opined that Appellant should be acquitted under that interpretation of the statute because the State could not prove that Appellant *knew* the arrest or detention was *lawful*.

conviction was refused so his 60-year sentence on that offense remains in place. Nevertheless, we granted Appellant's petition for discretionary review on the conviction for evading to clarify the elements of our evasion statute because our last authoritative interpretation on this statute occurred prior to the 1993 amendment.[4]

**Statutory Interpretation**

We review questions of law *de novo*. In performing the Court's constitutional role of interpreting the law, "we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation.[5] For this reason, this Court has long mandated a text-first approach to statutory interpretation.[6] "We presume that every word has been used for a purpose and that each, word, phrase, clause, and sentence should be given effect if reasonably possible."[7] This is because "[t]he statutory text is the best indicator of legislative intent."[8] "If the plain language is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."[9] "If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and only

---

[4] *See Jackson v. State*, 718 S.W.2d 724 (Tex. Crim. App. 1986).

[5] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[6] *See id*.

[7] *O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018).

[8] *Hughitt v. State*, 583 S.W.3d 623, 631 (Tex. Crim. App. 2019) (internal quotes omitted).

[9] *Nguyen v. State*, 359 S.W.3d 636, 642 (Tex. Crim. App. 2012) (internal quotes omitted).

then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history."[10] Statutory language is ambiguous if its plain meaning is "doubtful" because it is reasonably "subject to two [or more] constructions."[11] Absurd results are "consequences that the Legislature could not *possibly* have intended."[12] "The rule is that a statute that is susceptible of more than one construction will be so interpreted as to secure the benefit intended; will best effect the legislative intent and so that it will be constitutional and valid."[13]

*Ambiguity*

The Evading Arrest or Detention Statute provides: "A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."[14] The question is whether the person must *know* that the law enforcement officer is attempting to *lawfully* arrest or detain him. That answer is no—he must simply know that the detaining or arresting person is a peace officer.

---

[10] *Boykin*, 818 S.W.2d at 785-86.

[11] *Sparks v. State*, 174 S.W. 351, 352 (Tex. Crim. App. 1915).

[12] *Boykin*, 818 S.W.2d at 785.

[13] *Baldridge v. State*, 321 S.W.2d 309, 310 (Tex. Crim. App. 1959).

[14] TEX. PENAL CODE §38.04(a) (emphasis added).

One reading of the statute suggests that the word "knows" distributes evenly to the entire subordinate remainder of the sentence. Supportive of this reading is the fact that there is no punctuation—commas, parenthesis, or other grammatical tools. The knowledge culpable mental state travels to the words after "investigator" unimpeded.[15] Thus, under this first construction, the state must prove that the defendant *knows* three things: (1) the person is a peace officer or federal special investigator; (2) the person is attempting to arrest or detain him; and (3) the arrest or detention is lawful.

A second reading applies the mental state only to knowing (1) the person is a peace officer or federal special investigator; and (2) the person is attempting to arrest or detain him. A number of appellate courts have adopted this approach.[16] Under this understanding, while the detention or arrest must be *lawful* to reach conviction under the statute, the suspect does not need to *know* it is at the time of arrest or detention.[17] Given that it is

---

[15] In *Jackson v. State*, our Court analyzed a prior version of the evading arrest law: "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to arrest him." *Jackson v. State*, 718 S.W.2d 724 (Tex. Crim. App. 1986). Our Court held that the plain reading of the law makes it essential that a defendant *knows* the peace officer is attempting to arrest him. *Id.* at 726. We endorsed the view that "[t]he language in section 38.04 is clear and unambiguous, and there is only one reading consistent with grammatical structure of the statute" by requiring the State to prove that the defendant had knowledge of the attempted arrest. *Id.* (quoting Justice Bass from the preceding court of appeals opinion.).

[16] *See e.g., Loewe v. State*, No. 03-10-00418-CR, 2011 WL 350462 (Tex. App.—Austin Feb. 2, 2011, pet ref'd).

[17] *See e.g.*, *Celis v. State*, 416 S.W.3d 419, 449 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("[T]he presumption that the legislature intended a culpable mental state applies only to the criminal conduct or 'bad act,' not to every element of the offense. The culpable mental state must relate to the conduct (or the result), but not to any other element unless the legislature says so.").

susceptible to multiple interpretations as evidenced by multiple courts of appeals, the text of the statute is ambiguous.[18]

Accordingly, we look to legislative history for further indicators of legislative intent.[19] In 1993, the Texas Legislature amended the evading arrest statute. The legislature deleted: "It is an exception to the application of this section that the attempted arrest is unlawful or the detention is without reasonable suspicion to investigate." It simultaneously replaced that exception to prosecution with the word "lawfully" in describing the offense. Thus, given that the added term, "lawfully," deals with the same subject matter of now-repealed Subsection (b), it is more probable that the Legislature intended for the term to provide the same exception to prosecution as now-repealed-Subsection (b). [20] Consequently, it is far more consistent and prudent to interpret the amendment as only a stylistic or non-substantive change.[21]

---

[18] The concurring opinion emphatically denies any ambiguity. *See Andrus v. Texas*, 140 S. Ct. 1875, 1888 (2020) (Alito, J., dissenting) ("And we really mean it!!!"). Yet, the disagreement even among the judges on this Court and the justices in the court below further demonstrates the statute's quality of being open to more than one interpretation.

[19] *Boykin*, 818 S.W.2d at 785-86.

[20] TEX. GOV'T CODE § 311.021(5) ("In enacting a statute, it is presumed that public interest is favored over any private interest.").

[21] *Baldridge v. State*, 321 S.W.2d 309, 310 (Tex. Crim. App. 1959) ("The rule is that a statute that is susceptible of more than one construction will be so interpreted as to secure the benefit intended; will best effect the legislative intent and so that it will be constitutional and valid.").

*Absurdity*

Requiring the State to prove that a suspect knows that the seizure of his person is unlawful at the time of his arrest or detention leads to absurd results. At first pass, requiring that the defendant knows that the attempted arrest is lawful would prove absurd. But circumstantial evidence could provide proof for applying *mens rea* to the lawfulness for the stop.

Appellant's interpretation leads to absurd results when the defendant becomes responsible to determine the lawfulness of the stop.[22] The factual totality that motivates law enforcement in each circumstance to arrest or detain may be vastly different from what an arrestee or detainee may understand them to be.[23] This interpretation would essentially ask an arrestee or detainee—who may have conflicting criminal motivations to avoid detention or arrest—to objectively evaluate his own detaining officer, often his accuser, without a complete understanding of the officer's training, observations, and knowledge of

---

[22] Concerns that drivers would be able to drive off without consequences when a police officer attempts to pull a driver over are unavailing. There is a separate criminal offense in our Transportation Code that does not require a *mens rea* on the lawfulness of the stop. TEX. TRANSP. CODE § 545.421 FLEEING OR ATTEMPTING TO ELUDE POLICE OFFICER; OFFENSE. (a) A person commits an offense if the person operates a motor vehicle and willfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop.

[23] The circumstances contemplated here include scenarios where a suspect is intoxicated and/or otherwise mentally impaired. Given that many crimes happen when a suspect is under the influence of intoxicants, it would be ludicrous to require suspects to adjudge the lawfulness of a stop or arrest when they're not in full possession of their mental faculties.

the facts.[24] The question on the lawfulness of a stop or arrest is more appropriately handled by a trial court where the totality of facts may be developed from testimony and evidence, and arguments from both sides can be made.[25] Thus, whether an arrest or detention is lawful or unlawful has resulted in casebooks of technical and fact-intensive jurisprudence.[26] And the federal right to be free from search or seizure is only one layer of the analysis. The state constitution and statutory law on arrests and detentions, and their accompanying case law, create additional complexity.

Construing "lawfully" to be the equivalent of now-repealed Subsection (b) is also more consistent with the statute's purpose—which we doubt has changed as a result of the 1993 amendment.[27] We have previously said that the purpose of the evasion statute is "to deter flight from arrest by the threat of an additional penalty, thus discouraging forceful conflicts between the police and suspects."[28] Adding a *mens rea* to the lawfulness of the

---

[24] As the State aptly notes, this would run counter with the Fourth Amendment doctrine that stops and arrests are to be reviewed from an *objective* reasonable person standard—and not from the subjective perspective of the suspect and sometimes even the detaining officer. State's Br. at 21.

[25] The State also contemplates that officers in some cases may be operating on information that is confidential in order to protect a source as part of a larger investigation or situation that is quickly evolving. State's Br. at 19.

[26] *See e.g.*, Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT (West 1987) (expounding in four volumes on the current understanding of Fourth Amendment law and its case law developments from across the United States).

[27] *O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018) ("We presume that every word has been used for a purpose and that each, word, phrase, clause, and sentence should be given effect if reasonably possible.").

[28] *Alejos v State*, 555 S.W.2d 444 (Tex. Crim. App. 1979) (op. on reh'g) (citing Searcy & Patterson, "Practice Commentary.").

stop does nothing to deter flight. Rather, it would actually incentivize flight with suspects being able to claim ignorance on arrest and detention law. The exception to prosecution would swallow the enforceability against evading arrest or detention—rendering the statute unworkable and meaningless. This leads us back to the conclusion that the amendment could only have been a stylistic or non-substantive change.[29]

**Conclusion**

In summary, the evasion statute is ambiguous because it has two reasonable constructions where one construction leads to an absurd result. Considering its legislative history and the apparent purpose of the statute, we consequently construe Texas Penal Code § 38.04(a) to not require the *mens rea* to be applied to the lawfulness of the detention or arrest. The elements of the evasion statute are: (1) a person (2) intentionally flees (3) from a peace officer or federal special investigator (4) with knowledge he is a peace officer or federal special investigator (5) with knowledge the peace officer or special investigator is attempting to arrest or detain the defendant, and (6) the attempted arrest or detention is lawful.

Because Appellant was egregiously harmed when the jury charge failed to include the element that Appellant knew the officer was attempting to arrest him, we affirm the Court of Appeals in reversing Appellant's conviction of evasion of arrest. We also agree

---

[29] *See Baldridge v. State*, 321 S.W.2d 309, 310 (Tex. Crim. App. 1959) ("The rule is that a statute that is susceptible of more than one construction will be so interpreted as to secure the benefit intended; will best effect the legislative intent and so that it will be constitutional and valid.").

with the Court of Appeals that there was sufficient evidence to conclude that Appellant knew the officer was attempting to arrest or detain him (Appellant broke away from the officer attempting to handcuff him). Therefore, we remand for a new trial.

DELIVERED: January 17, 2024

PUBLISH